# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TERESA DORIS HARRIS, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security )<br>)<br>Defendant. ) | 1:17CV971 |

**ORDER**

On January 2, 2020, the United States Magistrate Judge's Recommendation [Doc. #14] was filed and notice was served on the parties pursuant to 28 U.S.C. § 636 [Doc. #15]. Plaintiff timely filed objections [Doc. #16] to which Defendant responded [Doc. #17] prompting Plaintiff's reply [Doc. #18]. The Court has appropriately reviewed the portions of the Recommendation to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's Recommendation. The Court therefore adopts the Recommendation.

Plaintiff Teresa Doris Harris first objects to the Recommendation's finding that the Administrative Law Judge ("ALJ") sufficiently accounted for Harris's moderate limitation in concentration, persistence, and pace in her residual functional capacity ("RFC") when he restricted her to simple, routine, and repetitive tasks. (Pl.'s Objs. at 2-4.) Harris correctly cites to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) in support of her position that the ALJ must explain why

her moderate limitation in concentration, persistence, and pace did not find its way into her RFC. (Id. at 2.) She argues that the ALJ merely "summarized [her] mental health treatment and then jumped to [his] conclusion." (Id. at 2-3.) Despite Harris's argument otherwise, the ALJ provided an adequate explanation. In addition to the reasons stated in the Recommendation, (Recommendation at 12-13), the ALJ gave "great weight to the findings of the State agency medical and psychological consultants", (Tr. 29). Those consultants recounted that Harris "state[d] that she doesn't have problems reading or writing", "that if she had a [sic] instructions she would be able to read them and follow them", and that "[s]he is able to read her mail and understand." (Tr. 73, 86.) They also noted that she obtained her GED and her CNA certification. (Tr. 73, 86, 87.) The ALJ's explanation of Harris's RFC, (see, e.g., Recommendation at 12-13 (citing Tr. 21, 27, 28, 29)), was sufficient to permit review, see Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018) (requiring the ALJ "build an accurate and logical bridge from the evidence he recount[s] to his conclusion about [the claimant's] residual functional capacity"), and her RFC is found to be supported by substantial evidence.

Next, Harris objects to the Recommendation's findings as to the ALJ's assessment of her fibromyalgia symptoms. (Pl.'s Objs. at 4-8.) She contends that the Recommendation and the ALJ improperly required objective evidence to support her symptoms. Yet, the Recommendation thoroughly explained the

2

requisite analysis of a claimant's fibromyalgia symptoms, in line with Harris's arguments, and nevertheless found that the ALJ's evaluation of the severity of Harris's symptoms was supported by substantial evidence. (Recommendation at 14-20 (citing Craig v. Chater, 76 F.3d 585 (4th Cir. 1996) (elaborating on the two-step test for evaluating a claimant's statements about symptoms); 20 C.F.R. § 404.1529 (explaining the social security administration's evaluation of symptoms including pain); SSR 12-2p, 2012 WL 3104869 (explaining the social security administration's evaluation of fibromyalgia); SSR 16-3p, 2016 WL 1237954 (explaining the social security administration's two-step process to evaluate a claimant's symptoms)).)

As the Recommendation explained and Harris acknowledged, a claimant's statements of her fibromyalgia-related symptoms are evaluated by the same two-step process as statements of other symptoms would be. (Compare Recommendation at 15-16 with Pl.'s Objs. at 5.) Relevant here, the second step in that analysis provides, "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR-12-2p; see also 20 C.F.R.

§ 404.1529(c)(3) (listing factors relevant to evaluating symptoms); SSR 16-3p (providing explanation of the second step in the evaluation process similar to that in SSR 12-2p).

Here, the ALJ acknowledged that "[i]t is well known that pain is a subjective symptom that is not measurable, and it is recognized that there are many disorders in which the common symptom is constant, unremitting pain, which is not responsive to therapeutic measures" and that "[p]ain can be an important factor in causing functional loss." (Tr. 25.) He further explained, though, that pain "constitutes disability for Social Security purposes only if it is not remediable, if it is of such degree as to preclude an individual from engaging in substantial gainful activity, and if it is associated with relevant abnormal findings." (Tr. 25.) The ALJ often referred to the lack of objective medical evidence to support fully Harris's testimony and other statements, but he did not end his analysis there. As required, he discussed Harris's daily activities; issues with and treatments for her back, feet, right ankle, and shoulder; her physicians' admonitions that her compliance with exercise, weight loss, and sleep apnea treatments were critical to controlling her pain; and her noncompliance over time with her sleep apnea treatment (see infra). (Tr. 23-29.) Although Harris argues otherwise, the ALJ did not discount her statements about the intensity and persistence of her pain solely because objective medical evidence did not substantiate those statements.

Harris also objects to the Recommendation's and ALJ's reliance on her

4

noncompliance to discredit in part her statements of her symptoms, (Pl.'s Objs. at 6-7), but that is what the policy permits. SSR 16-3p states in relevant part, "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Harris relies on SSR 18-3p despite acknowledging that it was not in effect at the time of the ALJ's decision and argues that "[t]here is no evidence that using a CPAP or exercising would have restored [her] ability to function such that she would be capable of performing light work" and that the ALJ once again failed to narrate a bridge from the evidence to his conclusion. (Pl.'s Objs. at 7.) Although the ALJ was not guided by SSR 18-3p, he nevertheless discussed some of the very evidence Harris contends is missing from the record. Her rheumatologist "further explained that medications did not generally work well and that being compliant with exercise and sleep apnea treatments would be critical to her success in controlling her pain", (Tr. 25), and another physician "spent a great deal of time discussing the benefits of weight loss, regular exercise and a good sleep cycle for the management of fibromyalgia syndrome" and "strongly advised the claimant to return to regular use of her CPAP", (Tr. 26). Not only did the ALJ build a bridge from the evidence to his conclusions about the effect of Harris's noncompliance, but substantial evidence supports his assessment and conclusion about the intensity, persistence, and limiting effects of her fibromyalgia symptoms.

For the reasons stated, IT IS HEREBY ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #10] is DENIED, that the Commissioner's Motion for Summary Judgment [Doc. #12] is GRANTED, and that this action is DISMISSED WITH PREJUDICE.

This the 24th day of March, 2020.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge